UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

TULLIE HYMAN,                                                        Index No.:

                                        Plaintiff,

                                                                     **COMPLAINT**

        -against-

THE CITY OF NEW YORK, DETECTIVE EDWARD HENSON,                       **JURY TRIAL DEMANDED**
DETECTIVE JENNIFER WILLIAMS, DETECTIVE KEVIN
CASHEN, THE NEW YORK CITY POLICE DEPARTMENT

                                        Defendants.
-------------------------------------------------------------------X

        Plaintiff TULLIE HYMAN, ("Plaintiff") by his attorneys, MICHAEL J. AVILES &
ASSOCIATES, LLC, complaining of THE CITY OF NEW YORK, DETECTIVE EDWARD
HENSON, Individually and as Employee of the NEW YORK CITY POLICE DEPARTMENT,
DETECTIVE JENNIFER WILLIAMS, Individually and as Employee of the NEW YORK CITY
POLICE DEPARTMENT, DETECTIVE KEVIN CASHEN, Individually and as Employee of the
NEW YORK CITY POLICE DEPARTMENT,  and the NEW YORK CITY POLICE
DEPARTMENT (Defendants), respectfully alleges, upon information and belief, as follows:

## NATURE OF ACTION

        1.      This is a civil action, pursuant to 42 U.S.C. §1983 and §1988, and state law, seeking
monetary damages for Plaintiff, TULLIE HYMAN, due to his wrongful arrest, prosecution,
conviction, and 15-plus year imprisonment caused by the pervasive misconduct of the individual
defendants and the New York City Police Department ["NYPD"].

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

2.     This action arises under 42 U.S.C. §§ 1983 and 1988.

3.     Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 USC § 1367, to adjudicate pendent law state claims.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5.     On or about October 11, 2016, Plaintiff served upon Defendant, CITY OF NEW YORK, timely notice of the present claims pursuant to New York General Municipal Law § 50-e. A hearing pursuant to New York General Municipal Law § 50-h was held on June 28, 2017.

6.     At least thirty days have passed since the serving the Notice of Claim, and the City of New York has neglected or refused to pay or adjust Plaintiff's claim."

7.     This action has been commenced within one year and ninety days of the accrual of Plaintiff's causes of action.

8.     Plaintiff has duly complied with all of the conditions precedent to the commencement of this action.

## THE PARTIES

9.     Plaintiff, TULLIE HYMAN, hereinafter HYMAN, is a citizen and resident of the State of New York and of the United States, and resides within the Eastern District of New York.

10.     Defendant, CITY OF NEW YORK, of which the County of Kings is a subdivision, is a municipal corporation of the State of New York and is a resident of the Eastern District of New York.

11.     Defendant, DETECTIVE EDWARD HENSON, hereinafter HENSON, at all relevant times, was a Detective/Police Officer, employed by the City of New York, acted toward

Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his individual and his official capacities.

12.     Defendant, DETECTIVE JENNIFER WILLIAMS, hereinafter WILLIAMS, at all relevant times, was a Detective/Police Officer, employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of her employment. She is sued in her individual and his official capacities.

13.     Defendant, DETECTIVE KEVIN CASHEN, hereinafter CASHEN, at all relevant times, was a Detective/Police Officer, employed by the City of New York, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his individual and his official capacities.

14.     Similarly, the NEW YORK CITY POLICE DEPARTMENT (NYPD), hereinafter NYPD, is an agency of the CITY OF NEW YORK. Detectives and police offices employed by the NYPD are agents and employees of the City of New York, which is legally responsible for torts they commit within the scope of their employment and/or under color of law.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**
**The Crime, Initial Investigation, Plaintiff's Indictment, and Prosecution**

15.     Shortly after 7:00 p.m., on March 10, 2000, a shootout erupted in the middle of Hassock Street in Far Rockaway, Queens, in front of the apartment complex at 1540 Hassock, known as the Redfern Houses. Ballistics established that more than thirty bullets were fired from at least four different weapons and in several directions, as bullet damage was found on several empty cars parked in the street, in the lobby and a second floor apartment in the 1540 building,

and in the Friendly Market located across the street from 1540. Maria Medina, on tenant patrol duty inside the 1540 lobby at the time, was struck by one of the bullets, crawled toward and then was helped into the nearby elevator for safety, and died within minutes.

16.     Earlier that day, Plaintiff HYMAN had arranged to meet his girlfriend Shakina Harris at the Redfern Houses. Upon arrival, Plaintiff double parked in front of the building, turned on his hazard lights and began what he believed to be a short wait for Shakina to arrive.

17.     Suddenly, and without warning, HYMAN heard what he believed to be gunshots. He saw two individuals in his driver's side mirror approaching the vehicle while firing shots at him. He crouched down low in the vehicle and was able to flee the scene. HYMAN was driving a green Mazda MX6 at the time of the incident. At no time during this encounter did the plaintiff possess any type of firearm.

18.     Johnathan Whitmore was standing outside the Redfern Houses that night. He has admitted that he fired multiple shots with a .38 caliber handgun. During the shooting, he ran inside 1540 Hassock Street where he was seen carrying the weapon by Margaret Canteros.

19.     During the police investigation, witness Shaquana Ellis was questioned by police. Ellis told the police that she did not see the shootings at all. Despite the fact that Ellis initially indicated that she did not see the shooting, Detectives HENSON and WILLIAMS conducted a further interview of Ellis.

20.     At this interview, Ellis reports that she did, in fact, see the shootout from the hallway window on the third floor and that two other individuals, Shaquana Delain and Amanda Benitez, were with Ellis when she allegedly saw the shooting.  HENSON and WILLIAMS fabricated the bulk of this statement and intimidated the witness to confirm the statement despite knowing that Delain and Benitez did not corroborate this version of events as relayed by Ellis. In

addition, HENSON and WILLIAMS knew that Ellis' account was not true for numerous reasons. For example, Ellis was not present at the time of the shooting, and second, it was physically impossible for her to have witnessed the shooting from the location she claimed to have witnessed it. All the defendants knew or should have known this fact from their presence at the crime scene.

21.     The statement from Ellis indicates that Delain and Benitez were with Ellis at the third floor stairway window when the shooting began. Benitez' statement indicates that she was in Apartment 2-D, which is Delain's apartment, when she allegedly saw the incident.

22.     Amanda Benitez was a friend of Shaquana Ellis and arrived at the Redfern Houses after the shooting. She entered the building via the roof of an adjoining building as the police had secured 1540 Hassock Street. No one was allowed to enter or leave. She went to her friend Donald's residence in apartment 3A. The morning after the shooting, the police took her and Ellis to the 101 precinct for an interview.

23.     Benitez insisted to Detectives HENSON and WILLIAMS that she was not present at the Redfern Houses when the shootings occurred.  Notwithstanding, HENSON and WILLIAMS improperly pressured, coerced and manipulated Benitez to state she was present when she was not, and to claim that she saw HYMAN shooting from a green car, when she did not. By doing so Defendants created a false written statement, which they used as factual basis for probable cause against HYMAN, who was the actual victim in the case. HENSON and WILLIAMS repeatedly insisted that Benitez saw the shooting - and told her that if she did not tell the police that she did witness the shooting, and identify the shooter as being in a green car, she would not see her mother again and she would be arrested. HENSON and WILLIAMS knew they could easily manipulate Benitez given her age.

24.     Detective HENSON intimidated, deceived and harassed Benitez to sign a statement indicating that she witnessed the events from the same third story hallway window were Ellis allegedly stood to "witness" what transpired thereby fingering HYMAN as a shooter. HENSON then caused Benitez to fabricate an identification of HYMAN by showing her a single photograph and falsely implicating HYMAN as the suspect when he knew that was false. Detective HENSON knew these statements to be false and intentionally intimidated, deceived and harassed Benitez into signing a false statement to corroborate the fabricated Ellis statement and produced knowingly false DD-5's to document the interviews and statements.

25.     HENSON knew or should have known that the Ellis statement was false, based in part, upon Benitez' statement that she was not with Ellis when Ellis was allegedly viewing the events from the third floor. Furthermore, HENSON knew that Ellis could not have witnessed the events from the third floor hallway window. At the habeas hearing, Benitez was emphatic that her statement was altered by the removal of the phrase "I was told that", or words to that affect (See Exhibit A, Decision and Order of Judge Dearie, at pp 57-64).

26.     HENSON and WILLIAMS therefore coerced and fabricated the statements of Ellis and Benitez to obtain probable cause to arrest, falsely accuse and prosecute the plaintiff of participating in a shootout when HYMAN was actually the victim of a violent assault.

27.     The NYPD and the individual defendants knowingly produced DD-5's containing false and fabricated statements and knowingly omitted Brady and Giglio material in those DD-5's. Henson and Williams knew that their fabricated statements would be relied upon by the District Attorney in the prosecution of HYMAN.

28.     Shaquana Delain was in apartment 3-A at the time of the shooting. She spoke with police at approximately 8:30 pm the day of the shooting and told them that "she didn't hear

or see anything". Based upon the foregoing, the defendants knew, or should have known, that the Ellis statement was false, since Ellis specifically told Henson that Delain was present in the third floor hallway when the shooting occurred.

29.     The defendants knew, or should have known about the close personal relationship of Ellis and co-defendant Johnathan Whitmore and others involved in the attempted assassination of Hyman. Ellis told police that she had known Whitmore for "quite awhile", that they were "pretty cool" and that Whitmore was the father of Ellis' cousin's daughter. The two were so close that Whitmore sent Ellis letters from Rikers Island during the pendency of the criminal case wherein he was charged with murder in the 2nd degree for his involvement in the shooting. Knowing this, defendants failed to recognize the bias and consequences of such relationships in evaluating the conflicting and contradictory statements of Ellis, Benitez, and Delain.

30.     In addition, the relationship between Deborah McCoy and Johnathan Whitmore was not revealed during her Grand Jury testimony. It was only at trial that McCoy testified that Whitmore's "sister was her godmother and his mother is my son's godmother".

31.     Subsequently, Ellis recanted her statement and testimony to i) various private investigators hired by Hyman, ii) D.A. Investigators, and iii) Executive ADA Charles Testagrossa.

32.     On March 11, 2000, the day after the shooting, HYMAN voluntarily went to the precinct to speak to the detectives about the shooting. Clearly inconsistent with the actions of a perpetrator engaged in a gun fight just hours prior, HYMAN waived his Miranda rights and gave a statement indicating that he was the target of an assassination attempt by Whitmore and his accomplices, known to police as members of the Dog Pound gang. HYMAN denied having a gun or firing a weapon that day. Defendants submitted a false DD-5 stating that HYMAN was

apprehended. Ultimately, it was conceded by police and prosecutors that despite the recovery and testing of all the ballistics and physical evidence in the case, no forensic or physical evidence linked HYMAN to any of the guns or bullets in the case, and certainly not the fatal stray shot that tragically took the life of Maria Medina. Moreover, HYMAN tried but was denied the opportunity for DNA testing on two of the guns used in the shootout. Police tried to link the guns to HYMAN, despite the fact they were recovered by police in Whitmore's trunk. Defendant intentionally failed to engage in fundamental tests they were trained to engage in to avoid the collection of evidence which would have exonerated HYMAN. The Grand Jury and Trial Jury were intentional mislead by Defendants into believing the weapons recovered in Whitmore's car trunk were somehow linked to HYMAN, a reality the defendants knew to be false but which they ignored and instead fabricated a theory that they belonged to HYMAN and were planted by HYMAN in Whitmore's car. The Defendants mislead the Grand Jury with other misstatements and omissions of material facts.

33.     Whitmore was arrested and questioned by police. He gave a statement making numerous admissions, including possessing and firing one of the weapons used in the shooting. That statement was patently ridiculous and incredible. As described by Judge Dearie in his Decision and Order following a hearing on HYMAN'S Federal Habeas Petition:

> The prologue of Whitmore's narrative, and indeed, the entire premise offered for his conduct on the night of the shooting, is a generalized, unsubstantiated-and in this Court's view, patently incredible-claim that he had reason to be afraid of Hyman because of a note left on a friend's car and not addressed to him that he interpreted as a threat

Later in his analysis of the Whitmore statement Judge Dearie opines:

> In this Court's view, any rational factfinder would be unlikely to credit the bulk of Whitmore's egregiously self-serving, untested assertions. Even assuming for the sake of argument that one could excuse his inability to offer any particulars about the note allegedly left on a friend's car, Whitmore still fails to offer any plausible basis for his decision to interpret the note as a threat to him, or for his decision to forego "ducking"

whenever he saw the red Acura and instead ready himself for a gunfight. His "guarantee" that there were two people in the green car, and his certainty that the green car was in front of the red car, are in stark conflict with critical features of the controlling trial account offered by Ellis-and, if any inference is to be drawn from that fact, it is most likely one of rehearsal gone awry. His failure to mention that codefendant Derek Harris was with him in front of 1540 is in conflict with the version of events the prosecution presented to the jury, and thus calls into question the validity of that version (or, alternatively, renders suspect the prosecution's claim, now, that Whitmore's statement would have bolstered its case at trial.) Finally, it cannot have been mere coincidence that, when disavowing knowledge of the guns fired from the cars in the street, Whitmore mentions precisely the two guns actually used and later found in his car. In short, the prosecution's resort to Whitmore's statement at the gateway hearing as a sort of smoking gun is difficult to explain; if introduced to rational jurors, their reaction would have to be an even fu1ther loss of confidence in the overall investigation.

34.    Whitmore admitted, amongst other things, that he threw the .380 that he used in the shooting out of his apartment window immediately afterwards, where the police recovered the weapon. He admitting emptying all 7 rounds from that .380 at the green car HYMAN was parked in. Despite these truths, HYMAN was arrested and charged as a co-defendant of Whitmore.

35.    Whitmore's car was impounded as a result of his arrest and the two other weapons fired at the scene were recovered from Whitmore's vehicle. The gun recovered outside of the window and two of the weapons recovered from the vehicle were all identified as being weapons that were fired in that day's shooting. Therefore, Whitmore was in possession of three of the four weapons fired that day. There were spent shells discovered that accounted for one other gun, which was never recovered or accounted for.

36.    As Judge Dearie pointed out Whitmore's statement was a patently incredible claim on its face. The defendants knew that Whitmore's statements, as to HYMAN, were a material misstatement of the facts. Notwithstanding the Defendant's helped create Whitmore's

false and misleading statements which they forwarded to prosecutors, knowing that prosecutors

would rely on in the prosecution of HYMAN both at the Grand Jury and Trial levels.

37.    Whitmore eventually pled guilty to possession of a weapon and received a seven-

year sentence.

38.    HYMAN was indicted and tried. The jury convicted him of one count of second-

degree murder, N.Y. Penal Law § 125.25(2), one count each of criminal possession of a weapon

in the second and third degree, P.L. §§ 265.03(2), 265.02(4), and reckless endangerment in the

first degree, P.L. § 120.25. The jury acquitted Hyman of the separate charge of attempting to

murder Jonathan Whitmore.

39.    At his sentencing, HYMAN passionately re-asserted his innocence, emphasizing

that he "did the best thing" and "went to the police ... didn't run from the law, "and that it was "an

injustice for an innocent man to go to jail for something he didn't do."

40.    His attorney told the Court that that, "to this day, there has not been a reasonable

explanation of how that weapon that allegedly was in Mr. Hyman's hands... ended up in the trunk

of Mr. Whitmore's vehicle," and that each of the witnesses "had some bias through either

relationships or friendships" with Whitmore or others. HYMAN was sentenced to 21 years to

life.

41.    The appellate brief prepared on HYMAN'S behalf by public defenders

raised a single claim, challenging one of the prosecution's peremptory challenges

during jury selection; HYMAN advanced several additional claims in a pro se

supplemental brief, including that one of the witness's photographic identifications was

suggestive, that the trial court erred in failing to issue a missing witness instruction, that

the murder and weapons possession convictions were inconsistent with the acquittal on

attempted murder, and that the evidence was legally insufficient. The Appellate Division,

Second Department, unanimously affirming the conviction, rejected each of these claims.

*People v. Hyman,*15 A.D.3d 417 (2d Dep't 2005).

42.     In his first post-conviction motion to vacate pursuant to C.P.L. § 440.30(1)(a),

HYMAN sought DNA testing on the intact 9mm Intratech pistol found in Whitmore's car. The

court denied the motion, concluding that because the gun was in Whitmore's car for nineteen

days, it was subject to contamination. The court granted HYMAN'S motion to reargue and upon

reconsideration, reaffirmed its initial ruling denying DNA testing.

43.     The Appellate Division granted HYMAN's leave to appeal the decision denying

DNA testing and ultimately affirmed that decision, concluding that HYMAN failed to show that

DNA testing results would have resulted in  a more favorable  verdict  *People  v. Hyman,* 51

A.D.3d  689 (2d Dep't 2008).  The Court of Appeals denied leave to appeal.  *People v. Hyman*,

10 N.Y.3d 960 (2008).

44.     By motion dated July 7, 2008, HYMAN moved in Queens County Supreme

Court pursuant to C.P.L. § 440.10 for an order vacating his conviction on the ground of newly

discovered evidence, pursuant to C.P.L. § 440.10(1)(g), based principally on the Ellis recant

and the materials corroborating it, and ineffective assistance of counsel, pursuant to C.P.L. §

440.10(l)(h), based principally on attorney Brettschneider's failure to call Investigator Hinkson

or to pursue Benitez.

45.     HYMAN submitted the signed, sworn affidavit of Stacey Manning, in which

Manning recounts a telephone call with Ellis saying that she didn't see who was shooting, but

only testified to help her cousin's baby's father, a guy named Jonathan Whitmore," whom

Manning "also kn[e]w from around the Redfern Projects" because her (Manning's) family lives at 1540 Hassock Street. Manning also states that she advised Ellis to contact the District Attorney's office, and that Ellis told her she was afraid "they will lock her up for not telling the truth from the beginning."

46.    HYMAN also submitted the signed and sworn affidavit of Irwin Blye, a new investigator retained by HYMAN'S 440 counsel. Blye reported that, on September 7, 2005,Ellis admitted to Blye that she did not witness the shooting or see HYMAN firing a weapon, but that she testified that she did "[b]ecause somebody forced [her]."

47.    Justice Kenneth Holder, who did not preside over HYMAN'S trial, rejected both claims in his decision. *People v. Hyman*, Ind. No. 1787/00 (Sup. Ct. Queens Co., Aug. 4, 2009).

48.    In December 2009, HYMAN moved for Coram Nobis relief, asserting that his appellate attorneys were ineffective for not arguing that trial counsel was ineffective for failing to make a sufficiency challenge, for failing to object to the verdicts as inconsistent, and for allowing the allegedly erroneous admission of the contents of an anonymous tip. The Appellate Division denied relief, holding that appellate counsel was not ineffective. *People v. Hyman*, 73 A.D.3d 1211 (2d Dep't 2010). The Court of Appeals denied leave to appeal. *People v. Hyman*, 15 N.Y.3d 806 (2010).

49.    The United States District Court for the Eastern District of New York granted the plaintiff's request for an evidentiary hearing to establish the allegations that he believed entitled him to habeas relief. On July 13, 2016, the Court granted Tullie Hyman's petition for a writ of habeas corpus. He was released from prison on October 11, 2016.

## FIRST CAUSE OF ACTION
### 42 USC § 1983 - Malicious Prosecution, Under the Fourth Amendment

50.    Plaintiff' repeats and re-alleges each and every allegation contained in paragraphs 1 through 49 of this Complaint.

51.    Defendants initiated, and continued a criminal proceeding against HYMAN, and did so without probable cause.

52.    Defendants acted maliciously and for a purpose other than bringing HYMAN to justice. These illegal and unconstitutional means included, but were not limited to intimidating witnesses to sign statements that were known to be false, and manufacturing the false statements of Shaquana Ellis and Amanda Benitez to implicate Tullie Hyman in the crime amongst other actions.

53.    HYMAN was indicted, arrested, arraigned and tried based upon false charges filed against him, therefore he was seized and his personal liberty and privacy was infringed upon.

54.    Although HYMAN was indicted by a Grand Jury, the indictment was procured by misconduct undertaken in bad faith, fraud, perjury, misrepresentation and falsification of evidence, withholding of exculpatory evidence, and the failure to make a full and complete statement of facts to the grand jurors.

55.    After 16 years, the criminal proceedings were finally terminated in HYMAN'S favor on October 11, 2016.

## SECOND CAUSE OF ACTION
### 42USC § 1983 – Fabrication of Evidence; Fabrication of Statements, 14thAmendment

56.    Plaintiff' repeats and re-alleges each and every allegation contained in paragraphs 1 through 55 of this Complaint.

57.     Defendants knowingly and willfully manufactured, or caused the manufacturing evidence against HYMAN. For example, defendant's fabricated false written statements, which they prepared and/or improperly compelled or induced from Amanda Benitez, Shaquana Ellis and Jonathan Whitmore to sign under "oath", accusing Plaintiff of participation in the murder of Maria Medina.

58.     Defendants knowingly and willfully manufactured, or caused the manufacturing of evidence prior to the start of HYMAN's criminal proceedings, continued fabricating evidence while HYMAN's criminal proceedings were pending by knowingly soliciting false statements from witnesses.

59.     They knew that the statements would, and caused the statements to, be relied upon by the District Attorney and the Court as a basis to formally initiate his prosecution, to hold him for trial without bail, and to compel witnesses to give testimony consistent with their statements at the trial itself.

60.     Defendants thereafter knowingly swore to a false Criminal Court complaint initiating the criminal prosecution of Plaintiff. Defendants fabricated evidence throughout the criminal proceedings by knowingly making false statements and omissions which were material to the proceedings.

61.     These lawless actions foreseeably caused the aforementioned witnesses to manufacture false evidence which Defendants then used to continue Plaintiff's malicious prosecution, without probable cause, and to bring about his false conviction at trial.

62.     Defendants provided false statements in a successful effort to cover up their previous misconduct in coercing witnesses, deceiving the court, defense, and jury; withholding Brady and Rosario material to oppose Plaintiff's meritorious motion to overturn his conviction.

Defendants then memorialized these false statements in a sworn affirmation knowing it would be used to defeat Plaintiff's motion to overturn his conviction, and it was so used, causing Plaintiff to serve additional years in prison.

63.      Defendants had a duty to Plaintiff to carry out the ongoing obligation, pursuant to the Due Process Clause of the Constitution and *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose documents and information favorable to Plaintiff with respect to his criminal prosecution and conviction.   Nevertheless, acting in concert with others, said defendants knowingly, willfully, recklessly, and/or with deliberate indifference to their Constitutional and statutory obligations, failed to disclose said documents and information to Plaintiff, thereby substantially delaying Plaintiff's efforts to overturn his wrongful conviction and prolonging his prosecution and imprisonment.

64.      The aforesaid conduct operated to deprive Plaintiff of his rights under the Constitution and Laws of the United States:

(a)      Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence," including the statements and testimony of witnesses who have been improperly influenced, or manipulated to provide such statements and testimony, in violation of the Fourth and Fourteenth Amendments, and the due Process and Fair Trial Clause of the Fifth, Sixth and Fourteenth Amendments, to the United States Constitution;

(b)      Not to be deprived of his liberty absent probable cause to believe he has committed a crime, a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

(c)      To timely disclosure of all material evidence favorable to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

65.     The following violations of Plaintiff's federal constitutional rights by the Defendants, together with their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the continuation of Plaintiff's malicious prosecution without probable cause, his wrongful conviction, his subsequent imprisonment, the defeat and delay of his efforts to overturn his wrongful conviction, and his other injuries and damages.

66.     The foregoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendant's employment and authority.

67.     Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, and/or deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights. After 17 years, the criminal proceedings were terminated in HYMAN'S favor on October 11, 2016.

68.     By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.


### THIRD CAUSE OF ACTION
### 42 U.S.C. §1983; Denial of Due Process and a Fail Trial Under the Fourteenth Amendments, Brady and Giglio;

69.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 68 of this Complaint.

70.     The aforesaid conduct, which Defendants committed in concert with and in aid of each other was the direct and proximate cause of HYMAN'S indictment and convictions and operated to deprive Plaintiff of his rights under the Constitution and the Laws of the United States:

(a)     Not to be arrested, indicted, prosecuted, detained, convicted, or imprisoned based upon false, fabricated, manufactured, misleading, or inherently unreliable "evidence" including the statements and testimony of witnesses who have been improperly influenced, coerced, or manipulated to provide such statements and testimony, in violation of the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

(b)     Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

(c)     To timely disclosure of all material evidence favorable to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

71.     The following violations of Plaintiff's Federal Constitution rights by the Defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately and foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty and detention without bail, his wrongful conviction, his subsequent imprisonment, and his other injuries and damages.

72.     The foregoing violations of Plaintiff's rights, including employing regularly issued legal process in order to achieve an improper collateral objective, HYMAN'S indictment and convictions, amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

73.     Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, and/or deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

74.     By reason of the foregoing, the Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damage

## FOURTH CAUSE OF ACTION
### Pendent State Claim - Malicious Prosecution

75.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 74 of this Complaint.

76.     By virtue of the foregoing, the Individual Defendants, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued, and/or caused the initiation or continuation of, criminal proceeding against TULLIE HYMAN.

77.     The criminal proceedings resulted in a conviction. After 16 years, the criminal proceedings were terminated in HYMAN'S favor on October 11, 2016.

78.     There was no probable cause for the commencement or the continuation of the criminal proceedings.

79.     The Defendants acted with actual malice.

80.     Defendant CITY OF NEW YORK is liable under the principle of respondeat superior.

## FIFTH CAUSE OF ACTION
### Pendent State Claims - Fabricating Evidence

81.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-80 as though fully set forth herein.

82.     Defendants fabricated evidence against HYMAN prior to the start of his criminal proceedings while they were investigating the case, and continued fabricating evidence while HYMAN's criminal proceedings were pending, by influencing and coercing witnesses to testify falsely against HYMAN.

83.     Defendants fabricated evidence against HYMAN prior to the start of his criminal proceedings while they were investigating the case, and continued fabricating evidence while HYMAN's criminal proceedings were pending, by knowingly soliciting false statements and testimony from witnesses.

84.     Defendants had a duty to Plaintiff to carry out the ongoing obligation, pursuant to the laws and Constitution of the State of New York, to disclose documents, exculpatory evidence and information favorable to Plaintiff with respect to his criminal prosecution and conviction. Nevertheless, acting in concert with others, said defendants knowingly, willfully, recklessly, and/or with deliberate indifference to their Constitutional and statutory obligations, failed to disclose said documents and information to Plaintiff, thereby substantially delaying Plaintiff's efforts to overturn his wrongful conviction and prolonging his prosecution and imprisonment.

85.     Defendants fabricated evidence against HYMAN prior to the start of HYMAN's criminal proceedings while they were investigating the case, and continued fabricating evidence

while HYMAN' s criminal proceedings were pending, by knowingly making false statements and omissions which were material to the proceedings.

86.     The fabricated evidence was the direct and proximate cause of HYMAN's indictment and convictions as he would not have been indicted or convicted if Defendants had not fabricated the evidence against him.

87.     Therefore, each of these fabricated acts were part of the chain of causation which deprived HYMAN of his liberty.

## SIXTH CAUSE OF ACTION
### Pendent State Claims - Respondeat Superior/Vicarious Liability

88.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-87 as though fully set forth herein.

89.     Defendants Detective Edward Henson, Detective Jennifer Williams, Detective Kevin Cashen and the additional investigators who investigated HYMAN but whose identities Plaintiff does not yet know, were at all times acting under color of State law and within the scope of their employment when they violated HYMAN's constitutional rights and committed the various torts against him, as outline above.

90.     As their employer, the City of New York is vicariously liable for their actions pursuant to the doctrine of respondeat superior.

## DAMAGES DEMAND

WHERFORE, Plaintiff demands judgment against the Defendants as follows:

a.      For compensatory damages to be determined;

c.       For reasonable attorneys' fees, together with costs and disbursements, pursuant

to 42 U.S.C. § 1988 and to the inherent powers of this Court;

d.       For such other and further relief as this Court may deem just and proper.

Dated:        Glen Head, New York
              October 10, 2017


                              Michael J. Aviles & Associates, LLC
                              145 Hudson Street, Suite 5C
                              New York, New York 10013
                              (212) 307-0023

                        By:    /s/ Michael Aviles
                              Michael Aviles, Esq.




                              **LAW OFFICES OF DENNIS J KELLY, PC**


                              Dennis Kelly, Esq.
                              Attorneys for Plaintiff
                              137 Glen Head Road
                              Glen Head, New York 11545
                              Telephone: (516) 686-6768
                              Facsimile:  (516) 686-6771

To:     Corporation Counsel of the City of New York
        All Defendants

Civil Action No.
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TULLIE HYMAN

                          Plaintiff(s),

        -against-

THE CITY OF NEW YORK, DETECTIVE EDWARD HENSON,
DETECTIVE JENNIFER WILLIAMS, DETECTIVE KEVIN
CASHEN, THE NEW YORK CITY POLICE DEPARTMENT

                          Defendant(s).
----------------------------------------------------------------X

**LAW OFFICES OF DENNIS J. KELLY, P.C.**
137 Glen Head Road
Glen Head, New York 11545
Telephone: (516) 686-6768
Facsimile: (516) 686-6771

*Pursuant to 22 NYCRR 130.1.1, the undersigned, and attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.*

*Dated: October 10, 2017*          Signature: _____
                                   Print Name: Dennis Kelly

Service of a copy of the within  is hereby admitted

Dated: October 10, 2017            _____
                                   Attorney(s) for Plaintiff

*PLEASE TAKE NOTICE*
        [  ]    *that the within is a (certified) true copy of a*          *entered in the*
                *Office of the clerk of the within names court on*
        [  ]    *that the*          *of which the within is a true copy will be presented for*
                *Settlement to the Hon.*          *, one of the judges of the within names court, on*

Dated: